## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROSEANN MICHELLE GILL, as Parent and Next Friend of K.C.R., a minor,**

      **Plaintiff,**

**v.**                                  **Case No.: 8:15-cv-840-MSS-AEP**

**GRADY JUDD, in his Official Capacity as the Sheriff of Polk County; GRADY JUDD, individually; and JONATHAN MCKINNEY, individually,**

      **Defendants.**

_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Dismiss Amended Complaint (Dkt. 22) and Plaintiff's response in opposition thereto.  (Dkt. 28).  Upon consideration of all relevant filings, case law, and being otherwise fully advised, the motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

Plaintiff, Roseann Michelle Gill, as parent and next friend of her minor daughter, K.C.R.[1], alleges that Defendants, Grady Judd, individually and in his official capacity as Sheriff of Polk County, Florida[2], and Deputy Jonathan McKinney, violated her civil rights by arresting her for felony aggravated stalking of a minor.

_____

[1] All references herein to "Plaintiff" are references to K.C.R.

[2] By suing Sheriff Judd in his official capacity, Plaintiff actually is suing the Polk County Sheriff's Office ("PCSO").  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued . . . in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent."

On September 9, 2013, a twelve year-old girl (hereinafter, "the victim") jumped off of a silo at an abandoned cement plant in Lakeland, Florida, in an apparent suicide. (Dkt. 19 at ¶ 10)  In subsequent days, Sheriff Judd appeared on numerous radio and television shows and held several press conferences relating to the incident. (Id. at ¶ 11)  Plaintiff alleges that Sheriff Judd commenced an investigation into the victim's death that turned into a "witch hunt." (Id. at ¶ 12)  The investigation focused on other minor children who knew the victim. (Id. at ¶ 14)  Deputy McKinney was the primary deputy involved in the investigation, which was publicized by Sheriff Judd as an attempt to stamp out "cyber bullies." (Id. at ¶¶ 15, 13)

On October 14, 2013, Deputy McKinney conducted a warrantless arrest of Plaintiff at her home for the felony charge of Aggravated Stalking of a Minor under 16 Years of Age, in violation of Section 784.048(5), Florida Statutes. (Id. at ¶ 16)  After the arrest, Deputy McKinney completed an arrest affidavit that detailed his investigation leading to Plaintiff's arrest.  The affidavit was based on interviews Deputy McKinney conducted with Plaintiff and several other minors who attended school with both Plaintiff and the victim. (Dkt. 19-1)

Following her arrest, Sheriff Judd and the PCSO released Plaintiff's personal information, including her full name and arrest photo, during a press conference. (Dkt. 19 at ¶ 17)  Sheriff Judd went on to conduct several other press conferences and interviews about the arrest, during which he accused Plaintiff of being responsible for the suicide of her former classmate. (Id. at ¶¶ 18-19)  During these appearances, Sheriff Judd referred to Plaintiff as a "felon," "harasser," "stalker," and "a person that tormented the victim." (Id. at ¶¶ 20-21)

2

After conducting its own investigation, the State Attorney's Office determined there was no evidence to support the charges against Plaintiff and dismissed them. (Id. at ¶¶ 50-51). Thereafter, Plaintiff filed this action, in which she asserts the following claims against Defendants: state law false arrest/false imprisonment against PCSO (Count I); state law false arrest/false imprisonment against Sheriff Judd (Count II); state law false arrest/false imprisonment against Deputy McKinney (Count III); state law malicious prosecution against Sheriff Judd (Count IV); state law malicious prosecution against Deputy McKinney (Count V); state law invasion of privacy against Sheriff Judd (Count VI); state law invasion of privacy against PCSO (Count VII); state law intentional infliction of emotional distress against Sheriff Judd (Count VIII); 42 U.S.C. § 1983 claims against Sheriff Judd (Count IX); 42 U.S.C. §1983 claims against Deputy McKinney (Count X); and 42 U.S.C. §1983 claims against PSCO (Count XI).

## II.   LEGAL STANDARD

### A.  Motions to Dismiss

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for her entitlement to relief, and "a formulaic recitation of the elements of a

cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S.Ct. at 1964-65).

In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994-95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### B. Qualified Immunity

Qualified immunity shields a law enforcement officer who is sued in his individual capacity for alleged federal constitutional violations that may arise during the performance of discretionary functions. Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009) (recognizing that "qualified immunity is a privilege that provides an immunity from suit rather than a mere defense to liability.") (internal quotation marks and citation omitted). Qualified immunity applies so long as the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010).

In invoking qualified immunity, the defendant officer first must prove that the challenged action was within the scope of the officer's discretionary authority. Case, 555 F.3d at 1325. If so, the plaintiff then must demonstrate (1) that the officer violated a constitutional right, and (2) the right was clearly established "in light of the specific context of the case, not as a broad general proposition." Id. "Unless the plaintiff's allegations

4

state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Brown v. City of Huntsville, Ala., 608 F.3d 724,733 (11th Cir. 2010) (internal quotation marks omitted). If the plaintiff fails to prove either prong, the officer is entitled to qualified immunity as a matter of law. Id. at 1327.

In examining whether the officer violated Plaintiff's constitutional rights, the Court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Maiorano v. Santiago, No. 6:05-cv-107-Orl-19KRS, 2005 WL 1200882, *7 (M.D. Fla. May 19, 2005) (internal quotation marks omitted).  To show that the law was clearly established, Plaintiff may cite decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court that provide clear notice of the violation.  McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007); Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

## III.   DISCUSSION

### A.  Section 1983 Claims

In Counts IX, X, and XI, Plaintiff asserts federal claims against Sheriff Judd, Deputy McKinney, and the PCSO, respectively.  She alleges that her arrest was a violation of her Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.  Defendants contend they are entitled to qualified immunity for these claims because there was probable cause for Plaintiff's arrest.

As a preliminary matter for the purposes of the qualified immunity analysis, it is clear from the facts alleged in the Amended Complaint – and neither party disputes – that

Deputy McKinney was acting within the scope of his discretionary authority as a deputy sheriff when he arrested Plaintiff.  The Court thus turns to the constitutional violation elements of the qualified immunity analysis.

"An arrest is quintessentially a seizure of the person, and therefore subject to the Fourth Amendment's reasonableness requirement."  McClish v. Nugent, 483 F.3d 1231, 1238 (11th Cir. 2007) (citing California v. Hodari D., 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).  An arrest conducted in a public place must be supported by probable cause, but does not require a warrant.  Id.

By contrast, it is well-settled that "an arrest in the home . . . is plainly subject to the warrant requirement; probable cause alone is insufficient."  McClish, 483 F.3d at 1238 (citing Payton v. New York, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).  "Under the Fourth Amendment, the home is a sacrosanct place that enjoys special protection from government intrusion."  Moore v. Pederson, 806 F.3d 1036, 1039 (11th Cir. 2015).  As a result, a "warrantless arrest in a home violates the Fourth Amendment  unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant."  Id. (quoting Bashir v. Rockdale Cty., Ga., 445 F3d. 1323, 1328 (11th Cir. 2006)).

Plaintiff alleges that Deputy McKinney arrested Plaintiff at her home.  (Dkt. 19 at ¶ 16)  Plaintiff further alleges: "Plaintiff did not consent to the aforementioned actions of PCSO, its employees and agents and the actions were against the will of the Plaintiff." (Dkt. 19 at ¶ 55)  "It is accepted, as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police

6

can show that it falls within one of [the] carefully defined . . . exceptions." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 474, 91 S. Ct. 2022, 2042, 29 L. Ed. 2d 564 (1971).  In their motion to dismiss, Defendants do not address Plaintiff's allegation that she was subject to a warrantless arrest at her home, focusing instead on whether they had probable cause to arrest Plaintiff.  It is well-settled that "the existence of probable cause does not by itself validate a warrantless home arrest." <u>Bashir</u>, 445 F.3d at 1328 (citing <u>Payton</u>, 445 U.S. at 588-89, 100 S.Ct. at 1381).  Defendants therefore must first must establish that Deputy McKinney's presence in Plaintiff's home was justified by exigent circumstances or consent.  <u>See</u> <u>id.</u>  Because Defendants have offered no such justification, Plaintiff's allegations are sufficient to survive a motion to dismiss with respect to her claim against Deputy McKinney.

For the same reason, the Court possesses insufficient facts at this stage to determine whether Deputy McKinney is entitled to qualified immunity.  If it is true that Deputy McKinney entered the residence and arrested the Plaintiff, without a warrant, without consent and without exigency, Deputy McKinney would have violated the Plaintiff's clearly established constitutional rights. It is premature at this stage to address the availability of qualified immunity as to this claim. The Court also declines at this early stage to address Plaintiff's Section 1983 claim against the PCSO.  She has alleged that the PCSO had a custom or policy encouraging the type of arrests made in this case.  (Dkt. 19 at ¶¶ 137-138)  For purposes of this Order, the Court accepts that Plaintiff includes warrantless arrests within a home without the necessary attendant exigency.  If that is established by the facts in the case, the claim could be sustained.  As such, this claim also survives Defendants' motion to dismiss.

With respect to Sheriff Judd, however, even if Deputy McKinney violated Plaintiff's Fourth Amendment rights, a supervisory official cannot be held liable under § 1983 for the unconstitutional actions of his subordinates based on respondeat superior liability. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).   Supervisors can be held personally liable only when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Id.  "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Id. (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). To be sufficient to notify the supervisor, the deprivations not only must be widespread, they also "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id. (quoting Brown, 906 F.2d at 671).

Plaintiff has not alleged that Sheriff Judd personally participated in her arrest.  She also has not alleged a history of widespread warrantless arrests in suspects' homes that would have put Sheriff Judd on notice of the need to correct the actions of his deputies. The § 1983 claim against him in his individual capacity therefore must be dismissed.

Finally, the Court notes that Plaintiff purports to assert her § 1983 claims for violation of both her Fourth and Fourteenth Amendment rights.  To the extent she attempts to state a claim under the Due Process Clause of the Fourteenth Amendment, this clause does not provide her with a remedy.  As the Supreme Court explained:

> Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these

> claims. We think this principle is likewise applicable here. The Framers considered the matter of pretrial deprivations of liberty, and drafted the Fourth Amendment to address it.

Albright v. Oliver, 510 U.S. 266, 273–74, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

Plaintiff relies upon the same set of facts in support of her Fourth and Fourteenth Amendment claims. The deprivations of which she complains are protected under the Fourth Amendment and it is not clear on the face of the Amended Complaint how her Fourteenth Amendment rights differ from her Fourth Amendment rights. The Court thus concludes that, as pled, her Fourteenth Amendment claims under Section 1983 are redundant and must be dismissed.

### B. False Arrest/False Imprisonment

In Counts I through III, Plaintiff alleges state law claims for false arrest/false imprisonment against the PCSO (Count I), Sheriff Judd (Count II), and Deputy McKinney (Count III).

In Florida, the torts of false arrest and false imprisonment are different labels for the same cause of action. See Rankin v. Evans, 133 F.3d 1425, 1431 n. 5 (11th Cir. 1998). Under Florida law, the elements of a cause of action for false arrest/false imprisonment are: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or "color of authority;" and (4) which is unreasonable and unwarranted under the circumstances. Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010). Probable cause is an affirmative defense and an absolute bar to both actions. Id. at 1435 (citing Bolanos v. Metropolitan Dade County, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996)). The Court has found no case that denied the probable cause defense because the arrest occurred in a home without a warrant. In

this respect, Plaintiff's Florida law tort claim for false arrest differs significantly from her federal claim for violation of her constitutional rights based on a warrantless home arrest.

Under Florida law, probable cause "exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (internal quotation marks omitted) (quoting Brinegar v. United States, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). "Probable cause requires more than mere suspicion, but does not require convincing proof." Bailey v. Board of County Comm'rs of Alachua County, 956 F.2d 1112, 1120 (11th Cir. 1992).

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown, 608 F.3d at 734. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Id. (internal quotation marks omitted) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)).

In conducting a qualified immunity analysis, a court takes "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Consequently, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Brown, 608 F.3d at 735 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). This standard is

objective and "does not include an inquiry in to the officer's subjective intent or beliefs." Id.

Here, Plaintiff was arrested for aggravated stalking of a minor in violation of section 784.048(5), Florida Statutes, which provides: "A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks a child under 16 years of age commits the offense of aggravated stalking, a felony of the third degree . . . ." Importantly, Section 748.048(5) does not require that harassing behavior contribute to or result in death or harm to a minor. The only requirement is that the perpetrator have "willfully, maliciously, and repeatedly follow[ed], harasse[d], or cyberstalk[ed] a child under 16 years of age."[3] If any aspect of the proscribed conduct can be established on the facts that are presented, probable cause, and certainly arguable probable cause exists to support an arrest under the statute.

Deputy McKinney arrested Plaintiff without a warrant. Following the arrest, he completed an arrest affidavit which detailed the findings of his investigation. Plaintiff attached that affidavit to her Amended Complaint. (See Dkt. 19-1) The affidavit states that between December 2012 and February 2013, Plaintiff "repeatedly and maliciously harassed" the victim. Id. at 2. Deputy McKinney interviewed four of the girls' schoolmates who stated: (1) they observed Plaintiff "bully" the victim "on several occasions, by calling her names and intimidating her," (2) Plaintiff coerced another student not to be friends with the victim any longer, and (3) Plaintiff got into a fight with the victim and beat her up. Id. The arrest affidavit states that Deputy McKinney also interviewed Plaintiff and that

---

[3] Although Sheriff Judd characterized the investigation as one attempting to stamp out "cyber bullies," section 748.048(5) pertains to a broader category of harassment.

she "confessed that she bullied the victim by calling her names and intimidating her," "stated she started a fight" with the victim, and that she was sorry for bullying her.  Id.

Based on the schoolmates' interviews and Plaintiff's alleged confession, Deputy McKinney concluded that Plaintiff "participated in and initiated a pattern of conduct between December 2012 and February 2013 with the purpose of maliciously harassing . . . a 12 year-old victim."  Id.  He further concluded that Plaintiff's harassment of the victim "was a contributing factor in [the victim's] decision to commit suicide."  Id.

Defendants contend that the content of the affidavit as evidence of the knowledge reposed in Deputy McKinney establishes probable cause for Plaintiff's arrest.  Plaintiff argues to the contrary, stating: (1) that the affidavit fails to provide a factual basis for Deputy McKinney's conclusion that Plaintiff's alleged harassment was a contributing factor in the victim's decision to commit suicide, (2) that the description of the fight was deliberately false and misleading, and (3) that even if the facts in the affidavit are true, they are not sufficient to establish that Plaintiff's actions contributed to the victim's death, which occurred seven months after the alleged harassment ended.  Plaintiff argues that the facts set forth in the affidavit amount to nothing more than "a common middle-school age rift."  (Dkt. 28 at 5)  Finally, she contends that Deputy McKinney "maliciously, deliberately, or with a reckless disregard for the truth, made material false statements in the Affidavit and omitted the key fact that Plaintiff had no substantial contact with the minor for more than seven months prior to the suicide." (Dkt. 19 at ¶ 42)  Plaintiff also contends that "Defendant McKinney further omitted that there was no evidence of text messages or postings on social media and that there was no credible or substantial evidence of harassment."  Id.

It should be reiterated that the arrest in question was a warrantless arrest.  The affidavit, which was prepared after the arrest, merely documents the evidence Deputy McKinney claims to have gathered in advance of the arrest and serves to inform the court of the content of that evidence.  This is significant because no information in the affidavit can be said to have unduly influenced an issuing court official, judge or magistrate prior to the arrest.  Thus, to the extent that any false and/or misleading facts or unreasonable conclusions were cited in the affidavit, it cannot be argued that those facts or conclusions rendered a warrant for Plaintiff's arrest invalid because there was no warrant issued.  See Jeanty v. City of Miami, 876 F. Supp. 2d 1134, 1345 (S.D. Fla. 2012) (noting with respect to warrantless arrests that factual defects in a post-arrest affidavit are "immaterial" and do not invalidate a warrantless arrest for which there was sufficient probable cause at the time of arrest).

Where, as here, a court is called upon to evaluate whether there was probable cause for a warrantless arrest, "[t]he information to be considered in evaluating probable cause is only that available to the officer at the time of the arrest or search."  Id. at 1344.  Here, therefore, the Court considers the arrest affidavit only to the extent that it demonstrates those facts that were personally known to Deputy McKinney at the time of Plaintiff's arrest.

"It is clearly established that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest if such false statements were necessary to the probable cause."  Rhodes v. Kollar,

503 F. Appx. 916, 923 (11th Cir. 2013) (internal quotation marks and citation omitted).[4] However, false statements or material omissions in an arrest affidavit do not defeat an officer's claim of qualified immunity if the remaining unchallenged facts are sufficient to demonstrate probable cause. Id. The question "thus becomes whether the statements were necessary for probable cause to exist — whether [the] affidavit contains other facts sufficient to show probable cause for an arrest warrant." Id.

The same procedural analysis applies with regard to considering whether arguable probable cause or probable cause supported this warrantless arrest.   The Court, therefore, disregards the only statement in the affidavit that is challenged by Plaintiff — Deputy McKinney's conclusion that Plaintiff's malicious harassment of the victim was a contributing factor in the victim's death.  See id.  Even excluding that statement, the Court concludes that the remaining facts in the affidavit were sufficient to establish probable cause.  The statements from Plaintiff's classmates and her own confession detail her alleged harassment of the victim, which falls within the type of behavior prohibited by Section 748.048(5).  Because that section does not require a showing of physical harm to the victim as a result of the harassment, Deputy McKinney's conclusion that Plaintiff's actions contributed to the victim's death was not necessary to a finding of probable cause. Similarly, the two facts alleged to have been materially omitted from the affidavit — that Plaintiff had no contact with the victim for seven months prior to her death and did not send the victim any text messages — also were not relevant to a finding of probable cause. The statute does not include a temporal component; that is, it was unnecessary for a

---

[4] Eleventh Circuit unpublished opinions are not binding precedent, but they may be cited as persuasive authority.  11th Cir. R. 36-2.

finding of probable cause that the events have fallen within a closer temporal proximity than they did.  Moreover, even though Sheriff Judd may have erroneously referred to the arrest as having involved "cyberstalking," there is no requirement in the statute that the harassment have been made visa electronic communication.

Because probable cause existed for Plaintiff's arrest for the offense of aggravated stalking of a minor, unassociated with the death of the victim and unassociated with use of the internet, Deputy McKinney did not violate Plaintiff's constitutional rights when he arrested her.

Furthermore, because Deputy McKinney did not violate Plaintiff's rights, Plaintiff cannot assert Florida state law claims for false arrest/false imprisonment against either Sheriff Judd or the PCSO on a respondeat superior theory of liability.  See Case, 555 F.3d at 1328 (dismissing false arrest claims against sheriff and city where the court determined deputy had probable cause to arrest plaintiff).  Counts I, II, and III therefore must be dismissed.

### C. Malicious Prosecution

In Counts IV and V of the Amended Complaint, Plaintiff asserts state law claims for malicious prosecution against Sheriff Judd and Deputy McKinney, respectively.  Plaintiff alleges that by arresting her on October 14, 2013, Sheriff Judd and Deputy McKinney "caused a prosecution and continued prosecution to be instituted against" her.  (Dkt. 19 at ¶ 75)

Under Florida law, Plaintiff must prove six elements to state a claim for malicious prosecution:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Rhodes, 503 Fed. Appx. at 922, (citing Kingsland, 382 F.3d at 1234).

As an initial matter, it is not entirely clear that Plaintiff has alleged there was "an original judicial proceeding . . . commenced" against her.  She alleges that after an investigation, the State Attorney's Office determined there was no evidence to support any criminal charges and dismissed all charges against her.  (Dkt. 19 at ¶¶ 50, 51)  However, she fails to otherwise allege if she was arraigned or if any judicial proceeding against her was commenced.  Nonetheless, even if the Court assumes that she was subject to a judicial proceeding, it is clear that her malicious prosecution claims fail.

 The existence of probable cause for a Plaintiff's arrest is an absolute bar to her malicious prosecution claim under Florida law.  See Lewis v. Morgan, 79 So. 3d 926, 928-29 (Fla. 1st DCA 2012) (court's determination that officer had probable cause to arrest plaintiff for grand theft of a motor vehicle also defeated his malicious prosecution claim); Barber v. Doe, 2010 WL 3384766, *10 (S.D. Fla. Aug. 5, 2010) (a determination of probable cause for plaintiff's DUI arrest barred his claim for malicious prosecution as a matter of law); Fox v. Graff, 276 Fed. Appx. 936 (11th Cir. 2008) (holding plaintiff's malicious prosecution claim was properly dismissed following determination that there was probable cause for his arrest); Brock v. City of Zephyrhills, 232 Fed. Appx. 925, 928 (2007) (same).  As discussed above, disregarding those claimed false statement in the

affidavit and considering the claimed material omissions, the facts stated in the affidavit were sufficient to establish probable cause for aggravated stalking of a minor.

Counts IV and V of the Amended Complaint therefore must be dismissed.

### D. Invasion of Privacy

Plaintiff asserts Florida common law claims for invasion of privacy against Sheriff Judd and the PCSO in Counts VI and VII of the Amended Complaint.  Plaintiff alleges that Sheriff Judd violated her right to privacy and her right to be left alone and free from governmental intrusion into her private life when he and other officers held press conferences about her arrest and published private facts about her.  (Dkt. 19 at ¶¶ 99-100)  Defendants contend that Plaintiff's claims must be dismissed because Sheriff Judd enjoys absolute privilege as to any statements made incidental to his official duties.  Defendants are correct.

"Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation."  Stephens v. Geoghegan, 702 So.2d 517, 522 (Fla. 2d DCA 1997).  The question of whether defamatory statements are absolutely privileged is a question of law to be decided by the court, and it is appropriate for a court to consider the issue of absolute privilege at the motion to dismiss stage.  Gordon v. Beary, No. 6:08-CV-73-ORL-19KRS, 2008 WL 3258496, *9 (M.D. Fla. Aug. 6, 2008) ("The policy behind an absolute privilege is to insulate the speaker from liability based on his or her identity, a fact that often appears on the face of the complaint.").

Plaintiff challenges Sheriff's Judd's entitlement to absolute immunity by arguing that his statements had "no official purpose" and "were made exclusively for the purpose of stirring up negative media attention toward a minor for his own self-aggrandizement."

(Dkt. 28 at 13)   However, the Amended Complaint alleges that Sheriff Judd released Plaintiff's personal information and falsely accused her of bullying the victim while giving press conferences and interviews to the media.  (See Dkt. 19 at ¶¶ 17-23)

The scope of an officer's duties is construed liberally, extending beyond "enumerated, required tasks," to include "discretionary duties that are associated with a given position." Stephens, 702 So. 2d at 523.  Florida courts have recognized that it is within the official duties of law enforcement officers to brief the media on matters of public concern.  Id.  Accordingly, law enforcement officials are granted absolute immunity for remarks made to the media related to such matters.  Id. (holding that absolute immunity applied to police chief's dissemination of information to the media regarding the investigation and discipline of a police officer involved in a shooting); Gordon, 2008 WL 3258496 at *9 (dismissing defamation claim against sheriff for statements made to the media accusing a pharmacist of illegally selling hydrocodone); Crowder v. Barbati, 2008 WL 2744420 (Fla. 4th DCA July 16, 2008) (reversing the trial court's refusal to dismiss a defamation claim on grounds of absolute privilege where sheriff made statements about a case to the media).  Notably, absolute immunity is granted regardless of how "false or malicious or badly motivated the accusation may be."  Hauser v. Urchisin, 231 So. 2d 6, 8 (Fla. 1970)

Because Sheriff Judd was acting within his official duties when he made the statements at issue, the claims against him in both his individual and official capacities must be dismissed.

### E.  Intentional Infliction of Emotional Distress

In Count VIII of the Amended Complaint, Plaintiff asserts a claim against Sheriff Judd for intentional infliction of emotional distress, alleging that he caused her to be unduly incarcerated, subjected her to undue prosecution, and purposely held press conferences in which he accused her of being a murderer.  (Dkt. 19 at ¶ 105)  She claims that Sheriff Judd should have known the aforementioned acts would result in severe emotional distress to her.  (Id. at ¶¶ 106-07)

To the extent Plaintiff's intentional infliction of emotional distress claim is premised upon Sheriff Judd's statements to the media, he is entitled to absolute immunity for the same reasons set forth with respect to Plaintiff's invasion of privacy claim.  Stephens, 702 So. 2d at 525 (an intentional infliction of emotional distress claim that "is simply a restatement, or recasting, of a defamation action . . . is subject to the same immunity protections").

To the extent Plaintiff's claims are based upon the nature and circumstances of her arrest, she also has failed to state a claim.  To plead a claim for intentional infliction of emotional distress, a plaintiff must assert that the defendant's conduct was so "extreme and outrageous" as to "go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized society."  LeGrande v. Emmanuel, 889 So. 2d 991, 994-95 (Fla. 3d DCA 2004).  "Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous to support a claim for intentional infliction of emotional distress."  Foreman v. City of Port St. Lucie, 294 Fed. Appx. 554, 557 (11th Cir. 2008) (citing Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278

(Fla. 1985)).  Whether alleged conduct rises to this level is a question of law.  Borneisen v. Capital One Fin. Corp., 490 Fed. Appx. 206, 213 (11th Cir. 2012).

In certain rare circumstances, an arrest without probable cause can constitute extreme and outrageous behavior.  Larose v. City of Sweetwater, 2014 WL 4793001 (S.D. Fla. Sept. 25, 2014).  Here, however, Plaintiff's arrest was made with probable cause, so the arrest itself did not constitute extreme or outrageous behavior.  Moreover, the facts as pled in the Amended Complaint do not allege conduct during the course of the arrest that was so shocking or lacking in decency as to state a claim for intentional infliction of emotional distress.  Accordingly, dismissal of this claim is warranted.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss (Dkt. 22) is **GRANTED in part** and **DENIED in part.**

2. The motion is **GRANTED** with respect to Counts I, II, III, IV, V, VI, VII, VIII, and IX, which are hereby **DISMISSED**.

3. The motion is **DENIED** with respect to Counts X and XI as they concern Plaintiff's Fourth Amendment rights.  To the extent Counts X and XI are premised upon a violation of Plaintiff's Fourteenth Amendment rights, those claims are **DISMISSED**.

**DONE** and **ORDERED** in Tampa, Florida, this 23rd day of March, 2016.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Person