**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ROSEANN MICHELLE GILL, as Parent
and Next Friend of K.C.R., a minor,

    Plaintiff,

v.                                                                Case No. 8:15-cv-840-T-35-AEP

GRADY JUDD, in his Official Capacity
as the Sheriff of Polk County; GRADY
JUDD, individually; and JONATHAN
McKINNEY, individually,

    Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Grady Judd ("Sheriff Judd"), in his Official Capacity as the Sheriff of Polk County; and Jonathan McKinney ("McKinney"), individually, pursuant to the Court's Order (Doc. 42), reply to Plaintiff's, Roseann Michelle Gill, as Parent and Next Friend of K.C.R., a minor, response in opposition (Doc. 65) to Defendants' motion for summary judgment (Doc. 50). Defendants' motion for summary judgment should be granted because there was consent to enter, because Detective McKinney is entitled to qualified immunity, and because no genuine issue of fact is in dispute regarding agency liability.

**I. ARGUMENT**

**A.**    **Plaintiff's Arguments Are Not Supported by Her Cited Evidence**

Plaintiffs rely on K.C.R.'s testimony that the deputies did not say anything before they came into the house and that they "pushed into" or "pushed past" her father, Emilio Roman. However, when first asked about the night of her arrest, K.C.R. testified that

she was not near the front door before the deputies came into the house; rather, she was lying down in her mother's bedroom. (K.C.R. Dep. 20:6-21:18.) K.C.R. testified that she came to the doorway of the bedroom after she heard the knock on the door; when she got to the doorway she "seen ["saw"] them all piled in." (*Id.* at 21:9-13.) Therefore, K.C.R. was not a witness to what was or was not said at the front door before the deputies entered the house. Although she testified later in her deposition that they were "coming in" as she got to the bedroom doorway, she confirmed that the door had already been opened by that time. (*Id.* at 26:4-16.) Mr. Roman testified that K.C.R. was still in the bedroom when the deputies were already in the house. (Roman Dep. 13:13-14:7.) He testified that Ms. Gill came out of the bedroom after they entered, that Gill stated that they were there to arrest K.C.R., that Gill told the deputies that K.C.R. was sleeping, and that they told Gill to go get K.C.R. out of bed. (*Id.*)

Moreover, even if K.C.R. did personally observe the deputies entering the house, when asked to clarify her testimony that they "kind of like pushed past him" (K.C.R. Dep. 26:17-20), she stated that "they just walked right in," (*id.* at 26:21-24), and that they "didn't like move him out of the way or anything." (*Id.* at 26:25-28:19.) K.C.R. thus did not testify that they pushed the father out of the way, that he told them not to enter, that he tried to close the door, or that he said anything to indicate that they would not be able to enter or that they should leave. Mr. Roman confirmed that he moved to the side when the deputies came in and that the deputies did not strike him, bump him, push him, or display or threaten to display or use a weapon. (Roman 9:19-10:11.)

Plaintiff emphasizes that the arrest occurred at "nighttime." Mr. Roman testified that it was approximately 6:00 p.m. to 8:00 p.m. (Roman 6:18-7:2.) The facts under

which courts find "nighttime" entries to be potentially problematic differ from those in the instant case, such as in the case cited by Plaintiff, *Jones v. United States*, 357 U.S. 493, 498 (1958), and in *United States v. Ramirez-Chilel*, 289 F.3d 744, 751 n.8 (11th Cir. 2002) (although noting that the fact that consent to a search occurred at midnight did not by itself negate the voluntariness of the consent to search). In any event, here a "nighttime" arrest was arguably better than daytime, as K.C.R.'s concern was that she did not want to be arrested "around people" who would "notice it happen." (K.C.R. 42:22-43:4.) In addition, in *Welsh v. Wisconsin*, 466 U.S. 740, 755 n.15 (1984), cited by Plaintiff, the court noted that on remand the court "may consider whether the petitioner's arrest was valid because the police had validly obtained consent to enter his home."

Plaintiff relies on Mr. Roman's negative answers to a series of questions on cross. (Roman 23:8-24:14.) None of Mr. Roman's answers presents a material fact as to whether he gave consent. His answer that he did not consent to the deputies coming into the house is not only in the nature of a legal conclusion, it does not negate the appearance of consent to a reasonable deputy. Waving to the deputies or asking them to come into the house or motioning them to come into the house is not required. The deputies did not have to verbally "ask" permission to come into the house for the entry to be constitutional; there is also no constitutional requirement for the deputies to obtain parental "permission" to arrest. Finally, Roman's answers that the deputies did not show anyone in the house a warrant or claim they had a warrant confirm that the deputies did not engage in deceit in order to gain consent.

Plaintiff also contends that Ms. Gill testified that she told Detective McKinney that she did not want K.C.R. arrested at home, citing page 25 of K.C.R.'s deposition. Page

25 does not support this contention. What page 25 does say is that Ms. Gill told Detective McKinney that she refused to bring K.C.R. into the station for questioning. Plaintiff takes the novel position that her arrest at home was unconstitutional because when Ms. Gill asked if she could bring K.C.R. in to the station to be arrested, she was told "possibly." (K.C.R. Dep. p. 42:1-21.) Although Plaintiff asserts that "the family" all believed that K.C.R. was to be taken into the station the next day, K.C.R. testified that such a promise or plan was never communicated to the family. (K.C.R. 23:5-24; 41:14-42:21.) Moreover, Ms. Gill did not even recall that part of the conversation – Ms. Gill only remembered that McKinney "said that if he needed [K.C.R.] to come in for questioning he would call me and I could bring her for questioning." (Gill16:24-16:3.)

Plaintiff also attempts to argue that McKinney's description of the entry conflicts with "KCR's version of the facts." (Doc. 65 p. 11.) As set forth above, K.C.R. was not present for the entry; thus, her testimony cannot be relied upon. Mr. Roman did not remember anything about the dog; however, this does not mean that there is a conflict in material fact precluding summary judgment. Incredibly, Plaintiff states that "KCR's facts clearly show that the Father was pushed aside by the deputies' forced entry." (Doc. 65 p. 11.) Not only does K.C.R.'s testimony clearly NOT show that; again, it is admitted by all three that K.C.R. was not actually in the room until the deputies were already inside. There is absolutely no testimony or evidence from anyone that Mr. Roman was "pushed out of the way." (Doc. 65 p. 12.) For consent to enter, it is probably not usual for the occupant to "open his arms in welcome." (Doc. 65 p. 13).

Finally, the affidavits of the deputies filed in support of Defendants' motion for summary judgment do not conflict. There is a different explanation from Plaintiff's for

why Rudd and Lynn did not mention the dog – they did not remember it and were not going to testify about something they did not remember.  (Just as Mr. Roman did not remember that Ms. Gill allegedly called the lawyer until defendant's counsel asked him about it– Roman Dep. p. 20:1-5.)  Nothing they testified to contradicts the affidavits of McKinney and Hamilton.  Although the dog being secured prior to the deputies gaining entry would clearly show that consent was communicated, eliminating this disputed fact, as must be done at this stage, does not require a conclusion that consent was not communicated or reasonably understood.

B.     **The Consent was Voluntarily Given**[1]

"The voluntariness of consent must be judged in light of the totality of the circumstances."  *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991).  In a Section 1983 action, "the plaintiff bears the burden of persuasion on every element." *Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 970 (11th Cir. 2002). Consent was found to be voluntary in *United States v. Ramirez-Chilel*, 289 F.3d 744, 751 (11th Cir. 2002), where the officers did not use a "show of force" – the officers did not draw their guns, nor were there a large number of officers surrounding the residence ready to arrest the suspect; rather, the defendant "yielded the right-of-way," which alone did not "suggest that he was overwhelmed by a show of official authority."  In contrast, where "a number" of FBI agents, with "weapons drawn, and with the vicinity in front of the apartment surround," knocked on the door and yelled, "FBI. Open the door," the court found that the suspect did not voluntarily consent to entry.  *United States v.*

---

[1] Because Detective McKinney had probable cause, he could have arrested K.C.R. without a warrant at school, *United States v. Watson*, 423 U.S. 411, 423-24 (1976), where he would have been able to rely on finding her.  It is thus understandable why the parents consented to the deputies entering to arrest in private.  (*See* Roman 21:15-22; K.C.R. 40:23-41:13 Gill 31:1-19.)

*Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986) (finding however that the suspect's consent to search his apartment and subsequent confession were "sufficiently purged of the taint of the illegal arrest" and should not have been suppressed).

The undisputed facts of this case are closer to *Tobin* and *Ramirez-Chilel*, and unlike *Edmonson*; there is no evidence that the deputies commanded the occupants to open the door or demanded entry into the house using a show of weapons. Neither is this case like *Moore v. Pederson*, 806 F.3d 1036, 1050-51 (11th Cir. 2015), *cert. denied*, (2016), despite Plaintiff's attempt to argue that the facts are indistinguishable to this case and that "Moore's holding applies equally to this case." (Doc. 65 p. 13.) In *Moore*, the officer did not have probable cause, and when the officer decided to arrest the suspect, the officer reached into the residence and cuffed the suspect. *Id.* at 1040.

C.  **McKinney is Entitled to Qualified Immunity**

Nevertheless, the holding in *Moore* is quite helpful, but not for Plaintiff. Although the Eleventh Circuit in *Moore* found on the facts before it at the summary judgment stage that the officer violated Moore's constitutional rights, the court determined that the officer had qualified immunity. *Moore* compels the conclusion that McKinney is entitled to qualified immunity because the law was not clearly established at the time of K.C.R.'s arrest that, on the facts before the Court after resolving factual disputes in Plaintiff's favor, McKinney's entry into the house was unlawful.

The cornerstone of qualified immunity is "*fair and clear notice* to government officials." *Moore*, 806 F.3d at 1052 (quotation marks omitted). "To show the law is clearly established, a plaintiff cannot rely on general, conclusory allegations or broad legal truisms." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993),

*modified*, 14 F.3d 583 (11th Cir. 1994) (quotation marks omitted).  Therefore, Plaintiff may not defeat qualified immunity by arguing merely that the "law has been long-established in the Eleventh Circuit" that arrest in a home without a warrant is unlawful failing consent or exigent circumstances.  (Doc. 65 p. 16.)  This is a "broad legal truism" that does not supply the requisite specifics.  "Instead, the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful."  *Id.*  "The line is not found in abstractions – to act reasonably, to act with probable cause, and so on – but in studying how these abstractions have been applied in concrete circumstances."  *Id.*  "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  *Id.*

Plaintiff has not offered a single case that "stakes out a bright line," *Post*, 7 F.3d at 1557, regarding the factual circumstances of this case.  Although not required to point to "exact factual identity," she failed to submit a case showing the "unlawfulness of the conduct" is "apparent from the pre-existing law."  *Moore*, 806 F.3d 1047.  That is because there is no such case.  Detective McKinney is entitled to qualified immunity because the Eleventh Circuit in *Moore* acknowledged that it was not clearly established until the time of its October 15, 2015, holding that a suspect does not give consent merely by complying with an officer's orders.  Thus, at the time of the October 14, 2013, arrest, a reasonable officer could have understood the actions of a suspect or occupant in "yielding to another's power or control" or "relinquish[ing] possession or control of to another because of demand or compulsion," as consent.  *See id.* at 1015.

Here, as in *Moore*, a reasonable officer could have understood Mr. Roman's actions as yielding to the deputies' power or control or relinquishing possession or control of the doorway, even eliminating the factual dispute regarding securing the dog. The court in *Moore* found it important that Moore "did not close his door in response to [the officer's] announcement from outside the home that Moore was under arrest." *Id.* at 1051. "Rather, Moore acquiesced in and submitted to [the officer's] instructions . . . ." *Id.* Contrary to Plaintiff's assertion in her response in opposition, there is no record evidence that the deputies pushed Mr. Roman out of the way; the only record evidence is that he moved out of the way such that a reasonable officer could have interpreted his movement as yielding or relinquishing the right of way. There is no record evidence that Mr. Roman communicated that he did not consent to entry for the purposes of executing the arrest. Nor is there record evidence that Detective McKinney or any of the deputies physically threatened the occupants or presented the occupants with the "type of overwhelming force that occurred in *Edmondson*." *Moore*, 806 F.3d at 1050-51. Just as Plaintiff attempts to create a material fact by arguing that Mr. Roman did not consent to entry, citing his deposition testimony on cross, the court in *Moore* found that Moore's argument that he did not consent to entry could not create a genuine issue of material fact regarding whether the officer was entitled to qualified immunity on the grounds that a reasonable officer could have construed Moore's uncontested words and actions as consent to entry. *Id.* at 1053.

The *Moore* court relied in part on *United States v. Berkowitz*, 927 F.2d 1376, 1386 (7th Cir. 1991): "As for *Berkowitz*, that case, too, could be construed to support the notion that a person inside his home 'surrenders' for arrest to an officer outside the

home when he acquiesces in the officer's directions – whatever those directions happen to be – instead of simply closing the door to his home." *Moore* at 1051.  Here, Mr. Roman testified that he opened the door, and that the deputies announced that they were there for K.C.R.  (Roman Dep. p. 8:9-25.)  Mr. Roman did not close the door or give any indication that he was not acquiescing in the deputies' instructions, nor did any of the other occupants of the house.[2]

Even if there is a genuine issue of material fact in dispute as to whether there was a constitutional violation, the law was not clearly established at the time that Mr. Roman's actions did not constitute surrender and consent.  Thus, McKinney is entitled to qualified immunity and summary judgment.

**D.     There is No Genuine Fact in Dispute as to Agency Liability**

Plaintiff argues that Sheriff Judd, in his official capacity, is liable because Sheriff Judd has a policy or practice of encouraging warrantless arrests within a home without the necessary exigency or consent.  Plaintiff attempts to argue that Sheriff Judd has an official, express, written policy that encourages unconstitutional warrantless arrests at home. (Doc. 65 p. 18.)  Plaintiff relies on General Order 74.3, attaching page one of the 12-page document.  There is no basis for Plaintiff's argument.  The policy does not suggest that deputies were permitted to enter residences to make warrantless arrests without consent or exigent circumstances.  Plaintiff's argument appears to be based on what she contends the policy lacks.  However, General Order 74.3 does invoke Federal Constitutional law, citing *Payton v. New York*, which held that warrantless and nonconsensual entry is unconstitutional.  In addition, the provision of the General Order

---

[2] Ms. Gill's refusal to take K.C.R. to the station for questioning and her screaming, "You can't take my baby" resulted from her understandable desire not to have K.C.R. arrested at all but did not communicate to the deputies that they did not have consent to enter.

that Plaintiff targets is 1(b), which is based upon Section 901.15, Florida Statutes, which was not relied upon by the deputies for entry. Plaintiff appears to be attacking the facial constitutionality of the statute. Because that section has not been ruled unconstitutional and because that statute was not even at issue here, Plaintiff's argument fails.

Plaintiff also fails to establish agency liability based on policymaker status. The only facts offered to support this theory are Sheriff Judd's statements in response to Matt Lauer on the Today Show. Even if the evidence is submitted and considered against Defendant's objection, the statements on the video do not support a claim for agency liability in the contours of the relevant issue. There is no evidence Sheriff Judd directed the arrest to be made without a warrant or without consent to enter the house.

Finally, Plaintiff does not offer even a single fact that Judd was deliberately indifferent to training. Liability for a governmental entity's failure to train and supervise its employees "is narrow, arising only where a municipality's failure to train its officers reflects a deliberate or conscious choice" by the governmental entity. *Schutt v. Lewis*, 2013 WL 3323667, at *3 (M.D. Fla. July 1, 2013) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (quotation marks omitted). There is no fact in dispute regarding an alleged deliberate choice by the sheriff's office not to train its deputies regarding constitutional arrests. Therefore, Sheriff Judd must be granted summary judgment.

## II. CONCLUSION

Defendants' motion for summary judgment should be granted because there was consent to enter, McKinney has qualified immunity, and because there is no evidence that an official policy was the moving force behind the alleged constitutional violation.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of December, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: HOWARD S. MARKS, ESQ., Burr & Forman, LLP, 200 South Orange Avenue, Suite 800, Orlando, FL 32801 (hmarks@burr.com; dmmorton@burr.com); and LAWRENCE G. WALTERS, ESQ., Walters Law Group, 195 West Pine Avenue, Longwood, FL 32750 (Larry@firstamendment.com; paralegal@firstamendment.com).

>s/Jennifer M. Vasquez
>JONATHAN B. TROHN
>Florida Bar No. 880558
>j.trohn@vctta.com
>s.talcott@vctta.com
>k.cassata@vctta.com
>HANK B. CAMPBELL
>Florida Bar No. 434515
>h.campbell@vctta.com
>t.bennett@vctta.com
>JENNIFER M. VASQUEZ
>Florida Bar No. 71942
>j.vasquez@vctta.com
>VALENTI CAMPBELL TROHN
>  TAMAYO & ARANDA, P.A.
>Post Office Box 2369
>Lakeland, Florida 33806-2369
>(863) 686-0043
>(863) 616-1445 Fax
>Attorneys for Defendants