UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROSEANN MICHELLE GILL, as Parent**
**and Next Friend of K.C.R., a minor,**

      **Plaintiff,**

**v.**                              **Case No: 8:15-cv-840-MSS-TBM**

**GRADY JUDD, individually,**
**JONATHAN MCKINNEY, individually,**
**and GRADY JUDD, in his official**
**capacity as the Sheriff of Polk County,**

      **Defendants.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion for Final Judgment on the Pleadings, (Dkt. 49), Plaintiff's response in opposition thereto, (Dkt. 58), Defendants' Motion for Summary Judgment, in the Alternative, (Dkt. 50), Plaintiff's Response in opposition thereto, (Dkt. 65), and Defendants' Reply in Support of their Motion for Summary Judgment. (Dkt. 69) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Defendants' Motion for Final Judgment on the Pleadings and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

### a.  Procedural History

Plaintiff, Roseann Michelle Gill, as parent and next friend of her minor daughter,

K.C.R.,[1] filed this action alleging that Defendants, Grady Judd, individually and in his official capacity as Sheriff of Polk County, Florida,[2] and Detective Jonathan McKinney, violated her civil rights when Detective McKinney arrested her for felony aggravated stalking of a minor.   (Dkt. 19)   On March 23, 2016, the Court dismissed with prejudice Plaintiff's state causes of action for false arrest, malicious prosecution, invasion of privacy, and intentional infliction of emotional distress (Counts I–IX) for failure to state a claim.   (Dkts. 30, 37)   The two remaining claims in this action are Plaintiff's claims under 42 U.S.C. § 1983 for violation of her Fourth Amendment right to be secure from unlawful seizure against Defendant McKinney and Defendant Judd in his official capacity ("PCSO"), respectively (Counts X–XI).[3]   (Dkt. 30)   Defendants now seek judgment as a matter of law on the pleadings, or in the alternative, summary judgment on the two remaining claims.   (Dkts. 49, 50)

### b. Factual Summary

In resolving a motion for summary judgment based on qualified immunity, the Court must resolve all issues of material fact in favor of Plaintiff.   See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002) (citing Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998)).   The Court does this while recognizing that "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'"   Id. (citing

---

1 All references herein to "Plaintiff" are references to K.C.R.

2 By suing Sheriff Judd in his official capacity, Plaintiff actually is suing the Polk County Sheriff's Office ("PCSO").   See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued . . . in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent.").

3 The Court previously dismissed these claims to the extent that they are premised on Plaintiff's Fourteenth Amendment Due Process rights, as opposed to her Fourth Amendment rights.   (Dkt. 30 at 8–9, 20)

Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).   Viewing all evidence in a light most favorable to Plaintiff and drawing all reasonable inferences from the facts in her favor, the relevant facts are as follows.

In September 2013 and October 2013, Defendant Detective McKinney was assigned to investigate the death of Rebecca Sedwick (hereinafter, "the victim"), a twelve-year-old girl who, on September 9, 2013, jumped off a silo at an abandoned cement plant in Lakeland, Florida, in an apparent suicide.   (Dkt. 19 at ¶10; Dkt. 51 at ¶5)   Through interviews with the victim's schoolmates and a confession by Plaintiff, Detective McKinney learned facts suggesting that Plaintiff had repeatedly bullied the victim and determined that there was probable cause to arrest Plaintiff for Aggravated Stalking of a Minor under 16 Years of Age.   (Dkt. 51 at 2)   On October 14, 2013, sometime in the early afternoon, (Dkt. 56 at 5, p.16–17), Detective McKinney called Plaintiff's parents to inquire whether they would bring Plaintiff to the station to answer questions regarding the investigation of the victim's death.   (Id. at ¶15; Dkt. 56 at 5, p.16–17)   Because Plaintiff's parents refused to bring Plaintiff to the station, Detective McKinney informed them that Plaintiff was probably going to be arrested the next day.   (Dkt. 55 at 7, p. 23–24)

Instead of arresting the Plaintiff the next day, the officers decided to effectuate the arrest that same evening.   Inexplicably, the Officers failed to secure a warrant in the ensuing hours even though they proceeded to the residence with the full intent to arrest the Plaintiff in her home.   Thus, between 6:00pm and 8:00pm, Detective McKinney, along with three other officers, Sergeant Christopher Lynn, Sergeant Debbie Hamilton, and Lieutenant Jamie Rudd,[4] arrived at Plaintiff's residence without a warrant.   (Dkt. 51

---

4 The Court notes that Lieutenant Rudd did not arrive on the scene until the other three officers were at the front door of Plaintiff's home and, admittedly, was only approaching the residence

at ¶17; Dkt. 53 at ¶5; Dkt. 57 at 3, p. 7)   Although the officers visibly carried weapons, they were not drawn at any point during the encounter.   (Dkt. 57 at 4, p.10)   Detective McKinney knocked and shouted in a loud voice, "Polk County Sheriff's Office."   (Dkt. 51 at ¶19)   Plaintiff's father, Emilio Roman, went to the door and opened it.   (Dkt. 57 at 3, p.8–9)   Detective McKinney told Mr. Roman that the officers were there to arrest Plaintiff, and the officers then proceeded to "push[] their way in."   (Id. at 3, p.8; Dkt. 66-10 at 2) Mr. Roman moved to the side as the officers entered the residence.   (Dkt. 57 at 3, p.8) The officers never asked for permission to enter the home, and Mr. Roman never gave express consent to their entry.   (Id. at 7, p.23)   The officers then handcuffed Plaintiff, who was dressed in pajamas, allowed her to put shoes on, and escorted her to the backseat of a patrol car.   (Dkt. 55 at 9, p.31–32)   On November 20, 2013, the State Attorney's Office filed a "Notice of No Bill," deciding not to seek formal charges against Plaintiff.   (Dkt. 55 at 20)

## II.     STANDARD OF REVIEW

### a.  Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed.   Fed R. Civ. P. 12(c).   A motion under this Rule is "governed by the same standards as a motion to dismiss under Rule 12(b)(6)." United States v. Bahr, 275 F.R.D. 339, 340 (M.D. Ala. 2011).   Thus, the Court "accept[s] the facts in the Complaint as true and view[s] them in the light most favorable to the

---

when Plaintiff's father first opened the door.   (Dkt. 53 at ¶¶5–6)   Thus, for purposes of this considering this motion, the Court discounts his testimony as he was unable to observe whether or not consent to enter the residence was sought or given.

nonmoving party." Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996). "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint. Id. (citing White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999)).

### b. Summary Judgment

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.   Porter v. Ray, 461 F.3d 1315, 1320–21 (11th Cir. 2006) (citation omitted).   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.   Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").   "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it."   Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

### a.  Judgment on the Pleadings

Defendants contend that they are entitled to final judgment on the pleadings because Plaintiff's Complaint fails to adequately state a claim under 42 U.S.C. § 1983 for violating her Fourth Amendment right to be protected from unlawful seizure.   To sufficiently plead a claim under §1983, a Plaintiff must allege that she was "'deprived of a federal right by a person acting under color of state law.'"   Stephens v. DeGiovanni, No. 15-10206, 2017 WL 1174381, at *7 (11th Cir. 2017) (quoting Almand v. DeKalb Cty., 103 F.3d 1510, 1513 (11th Cir. 1997)).   Defendants assert that Plaintiff's Complaint does not state a claim under §1983 because "Plaintiff never alleged or contended that Defendant McKinney did not have consent to enter [her] house."   (Dkt. 49 at 2)

The Court has already determined that Plaintiff's allegations against Defendant McKinney and Defendant Judd, in his official capacity, under §1983 were sufficient to survive Defendants' motion to dismiss for failure to state a claim. (Dkt. 30 at 6–7) In particular, the Court found:

> Plaintiff alleges that Deputy McKinney arrested Plaintiff at her home. (Dkt. 19 at ¶16) Plaintiff further alleges: "Plaintiff did not consent to the aforementioned actions of PCSO, its employees and agents and the actions were against the will of the Plaintiff." (Dkt. 19 at ¶ 55) "It is accepted, as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of [the] carefully defined . . . exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 474, 91 S. Ct. 2022, 2042, 29 L. Ed. 2d 564 (1971). In their motion to dismiss, Defendants do not address Plaintiff's allegation that she was subject to a warrantless arrest at her home, focusing instead on whether they had probable cause to arrest Plaintiff. It is well-settled that "the existence of probable cause does not by itself validate a warrantless home arrest." Bashir, 445 F.3d at 1328 (citing Payton, 445 U.S. at 588-89, 100 S.Ct. at 1381). Defendants therefore must first must establish that Deputy McKinney's presence in Plaintiff's home was justified by exigent circumstances or consent. See id. Because Defendants have offered no such justification, Plaintiff's allegations are sufficient to survive a motion to dismiss with respect to her claim against Deputy McKinney.
>
> …
>
> The Court also declines at this early stage to address Plaintiff's Section 1983 claim against the PCSO. She has alleged that the PCSO had a custom or policy encouraging the type of arrests made in this case. (Dkt. 19 at ¶¶ 137-138) For purposes of this Order, the Court accepts that Plaintiff includes warrantless arrests within a home without the necessary attendant exigency. If that is established by the facts in the case, the claim could be sustained. As such, this claim also survives Defendants' motion to dismiss.

(Dkt. 30 at 6–7)

As noted above, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted. Indeed, "[t]he main difference between the motions is that a motion for judgment on the

pleadings is made after an answer and that answer may also be considered in deciding the motion." Bahr, 275 F.R.D. at 340.   Defendants do not allege that anything contained in their Answer, (Dkt. 39), or any other developments in this action since the Court's denial of the motion to dismiss should alter the Court's determination on the sufficiency of Plaintiff's allegations.   Instead, Defendants essentially use the Motion for Judgment on the Pleadings to re-argue its motion to dismiss for failure to state a claim on grounds not raised in their motion to dismiss.   However, the Court finds no reason to alter its previous determination.   See, e.g., Williamson v. Recovery Ltd. P'ship, No. 2:06-CV-292, 2010 WL 3769136, at *4 (S.D. Ohio Sept. 24, 2010) (declining to disturb its denial of defendants' motion to dismiss upon review of defendants' motions for judgment on the pleadings because "the standard for a motion for judgment on the pleadings is the same as that for a motion to dismiss").   As the Court stated previously, Plaintiff's allegations as to Defendants' conduct are sufficient to state a claim under §1983.   (See Dkt. 30)

### b.  Summary Judgment

#### i.  Claim Against Detective McKinney

Defendants contend that Detective McKinney is entitled to summary judgment because there is no genuine issue of material fact regarding whether Detective McKinney had consent to enter the house and that Detective McKinney is, therefore, entitled to qualified immunity.   Qualified immunity shields a law enforcement officer who is sued in his individual capacity for alleged federal constitutional violations that may arise during the performance of discretionary functions.   Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009) (recognizing that "qualified immunity is a privilege that provides an immunity from suit rather than a mere defense to liability.") (internal quotation marks and citation

omitted).   Qualified immunity applies so long as the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010).

In invoking qualified immunity, the defendant officer first must prove that the challenged action was within the scope of the officer's discretionary authority.   Case, 555 F.3d at 1325.   If so, the plaintiff then must demonstrate (1) that the officer violated a constitutional right, and (2) the right was clearly established "in light of the specific context of the case, not as a broad general proposition."   Id.

In examining whether the officer violated Plaintiff's constitutional rights, the Court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."   Maiorano v. Santiago, No. 6:05-cv-107-Orl-19KRS, 2005 WL 1200882, *7 (M.D. Fla. May 19, 2005) (internal quotation marks omitted).   To show that the law was clearly established, Plaintiff may cite decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court that provide clear notice of the violation.   McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007); Priester, 208 F.3d at 926.

As a preliminary matter for the purposes of the qualified immunity analysis, it is clear from the facts alleged in the Amended Complaint – and neither party disputes – that Deputy McKinney was acting within the scope of his discretionary authority as a deputy sheriff when he arrested Plaintiff.   The Court thus turns to the constitutional violation elements of the qualified immunity analysis.   Here, Plaintiff brings claims under 42 U.S.C. § 1983, which provides individuals with protection from the deprivation of any rights, privileges, or immunities secured by the Constitution and laws under color of law.

Plaintiff alleges that Detective McKinney violated her Fourth Amendment rights when he unlawfully arrested her in her home.   (Dkt. 19 at 22–24)

The Fourth Amendment provides individuals with the "right to be free from unreasonable searches and seizures . . . and an arrest is a seizure of the person." Stephens, No. 15-10206, 2017 WL 1174381, at *10 (citations and quotation marks omitted).   "Under the Fourth Amendment, the home is a sacrosanct place that enjoys special protection from government intrusion."   Moore v. Pederson, 806 F.3d 1036, 1039 (11th Cir. 2015).   Thus, "[a]n arrest in the home . . . is plainly subject to the warrant requirement; probable cause alone is insufficient."   McClish, 483 F.3d at 1238 (citing Payton v. New York, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).   A "warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant."   Id. (quoting Bashir v. Rockdale County, Ga., 445 F3d. 1323, 1328 (11th Cir. 2006)).

The Court previously determined that Detective McKinney had probable cause to arrest Plaintiff for Aggravated Stalking of a Minor in violation of section 784.048(5), Florida Statutes.   (Dkt. 30 at 11)   But the Court noted that "'the existence of probable cause does not by itself validate a warrantless home arrest.'"   (Id. at 7) (quoting Bashir, 445 F.3d at 1328 (citing Payton, 445 U.S. at 588–89, 100 S.Ct. at 1381)).   The Court explained that Defendants would need to establish that Defendant McKinney's presence in the home was justified by exigent circumstances or consent in order to rebut the presumptive unreasonableness of the arrest.   (Id.)   In their motion for summary judgment, Defendants do not contend that Detective McKinney entered Plaintiff's home

due to exigent circumstances.  Instead, Defendants argue that Detective McKinney's entry into Plaintiff's home was justified by consent and, thus, there was no constitutional violation.

Whether an individual's consent was given voluntarily is a question of fact that must be decided in light of the totality of the circumstances.  United States v. Stiner, 551 F. Supp. 2d 1350, 1357 (M.D. Fla. 2008) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 223–29 (1973)).  The Eleventh Circuit has found that consent to entry may be implied by conduct where such conduct is not merely an "acquiescence to a show of official authority."  United States v. Edmondson, 791 F.2d 1512, 1514–15 (11th Cir. 1986) (finding that there was no implied consent where numerous federal agents arrived to defendant's home with weapons drawn and the defendant opened the door, stepped back, and placed his hands behind his head).  One way to impliedly consent to the officers' entry is by "yielding the right-of-way" upon request for permission to enter a residence.  United States v. Ramirez–Chilel, 289 F.3d 744, 752 (11th Cir. 2002).  For instance, in Holmes v. Kucynda, 321 F.3d 1069, 1074 (11th Cir. 2003), the court found that consent to officers' entry could be inferred because "there [wa]s nothing in this record to contradict the Officers' testimony that when they asked if they could enter, [the property owner] stepped back in a gesture of acquiescence."

However, it is well established that the consent cannot be implied by the failure to object to entry.  "To permit the government to show consent to enter from the lack of an objection to the entry would be to justify entry by consent and consent by entry.  This will not do."  Bashir, 445 F.3d at 1329 (citations and quotation marks omitted).  For instance, consent could not be inferred in United States v. Gonzalez, 71 F.3d 819, 829 (11th Cir.

1996) <u>overruled on other grounds by</u> <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), where upon an officer's request for entry into a home, a woman stated that she wanted to go inside the home and get a drink of water and the police officer followed her inside.   Likewise, in <u>Bashir</u>, the Eleventh Circuit rejected law enforcement officers' implied consent argument finding no evidence that the plaintiff "yielded the right-of-way in response to a request for permission to enter."   445 F.3d at 1329.   There, the plaintiff spoke with a police officer outside his home regarding the officers' previous arrest of the defendant's wife and sons. <u>Id.</u> at 1325–26.   When the plaintiff noticed his seven-year-old son unattended nearby, he abruptly stopped talking to the officer, picked up his son and walked into the home.   <u>Id.</u> at 1326.   Without requesting permission, an officer followed him into the home.   <u>Id.</u>   The court concluded that consent could not be inferred from the plaintiff's "simple act of disengaging from conversation with [the police officer] and walking into the house" and that this act was not effectively yielding the right of way in response to a request for entry. <u>Id.</u> at 1329.

Here, viewing the evidence in a light most favorable to Plaintiff, a jury could find that Detective McKinney did not have implied consent to enter Plaintiff's home.   Like the officer in <u>Bashir</u>, neither Detective McKinney nor any of the other officers asked for permission to enter the residence.   Instead, Mr. Roman's deposition testimony supports that once Mr. Roman opened the door, Detective McKinney stated the reason for the officers' presence, namely, to arrest Plaintiff, and began to enter the residence.   (Dkt. 57 at 3, p.8) ("And when I opened [the door], they said we're here for [Plaintiff] and they just kind of pushed their way in, and I, you know, it was a bunch of people so I kind of went to

the side a little bit.")[5]   Due to the number of officers, their clear authority as officers, the fact that they carried weapons and their abrupt and dismissive entry into the home, Mr. Roman stepped to the side.   Defendants seemingly admit to this sequence as they argue that "[Mr. Roman] moved to the side *as the sheriff's deputies came into the house.*"   (Dkt. 50 at 4) (emphasis added)   Under the Plaintiff's version of the facts, Mr. Roman did not "yield the right of way," as he only moved to the side *after* the officers had already begun to enter the house.   Unlike in cases cited by Defendants, Mr. Roman's body language was not prompted by any command or request for permission to enter by the officers, as no one testifies that such permission was sought in advance of the Officers' entry into the residence.

At most, Mr. Roman's stepping back as the officers began entering the home could be characterized as acquiescence to the officers' apparent authority.   For example, in Edmonson, the defendant, upon the approach of FBI agents stepped side and raised his hands above his head, allowing officers to enter his residence without a warrant.   The Eleventh Circuit agreed with the district court's finding that by these actions the arrestee did not consent to officers' entry into his apartment because he was merely acquiescing to an official show of authority.   791 F.2d 1512, 1515 (11th Cir. 1986).   Quoting the district court's finding, the Eleventh Circuit recognized that there was such a "show of authority" due to "'presence of a number of officers'" although "'there was no direct evidence that defendant actually saw the officers' drawn weapons.'"   Id.   Here, four

---

5 Defendants reject this version of the facts as told by Plaintiff because they contend that Plaintiff "was not a witness to what was or was not said at the front door before the deputies entered the house."   (Dkt. 69 at 2) However, even if the Court discounts Plaintiff's version of the facts because of a lack of opportunity to observe, its finding is unchanged.   Mr. Roman himself testified as to the entire encounter with the deputies, including the manner in which the officers entered the residence.

armed officers appeared at Mr. Roman's door, announced that they were there to arrest his daughter, and immediately began to move into the home.   Mr. Roman averred that he knew that the officers were carrying weapons.   (Dkt. 57 at 4, p.10; Dkt. 66-10 at ¶6) It was reasonable for Mr. Roman to believe under those circumstances that he did not have a right to object to the officers' entry, and so, according to his version of the facts, he stepped aside as the officers entered.   His only other choice would have been to attempt to forcibly block their passage, which is not advisable or wise.   See Gonzalez, 71 F.3d at 829 (citing 3 Wayne R. LaFave, Search and Seizure—A Treatise on the Fourth Amendment § 8.2(a) at 180 (1987)) (noting that "when the police state that they 'want to' undertake some activity, agreement to such an imperative statement is often seen as submission to a claim of authority.").   In view of the totality of the circumstances, Mr. Roman's action of moving to the side *after* the officers began to enter without their first asking for consent cannot be seen as free and voluntary consent for them to enter.

The Court acknowledges that under Detective McKinney's and Sergeant Hamilton's versions of the facts, Mr. Roman initially responded to Detective McKinney's knock on the door by stating that he needed to secure his dog before the officers could enter.   (Dkt. 51 at ¶23; Dkt. 52 at ¶13)   According to the two officers, Mr. Roman then returned to the door and the officers proceeded to enter the residence.   (Dkt. 51 at ¶24; Dkt. 52 at ¶13)   If these facts are believed perhaps a jury could conclude that Mr. Roman assented to the entry into the residence.   However, Ms. Gill, Plaintiff's mother, who was present during the encounter, denies that there was any dialogue between Mr. Roman and the officers, including any dialogue about securing a dog, before their entry, and neither Mr. Roman nor the third officer on the scene references such dialogue in their

testimony.   (Dkt. 56 at 5, p.14; see Dkts. 54, 57)   Under the qualified immunity analysis, the Court must view this evidence in the light most favorable to Plaintiff and assume for the purpose of Defendants' Motion that there was no conversation about securing the dog.   As such, implied consent for entry cannot be based on this disputed conversation.[6] The Court thus finds that a jury could find that Detective McKinney violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

Although the Court finds that the evidence supports a constitutional violation, it still must assess whether the violated right was "clearly established" at the time of the violation.   This analysis turns on whether the available case law elucidated "fair and clear notice" that the conduct was unconstitutional.   Bashir, 445 F.3d at 1331.   As Defendants acknowledge, Plaintiff may demonstrate that the violated right was clearly established in one of three ways: (1) "show[ing] that 'a materially similar case has already been decided'"; (2) "point[ing] to a 'broader, clearly established principle [that] should control the novel facts [of the] situation'"; or (3) demonstrating that "the conduct involved in the case may 'so obviously violate[] th[e] constitution that prior case law is unnecessary.'" Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012) (quoting Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005)).

Here, Plaintiff's constitutional right was clearly established.   It is well settled that an officer may not effect an in-home warrantless arrest without probable cause and either

---

[6] Even if these facts were construed in a light most favorable to Defendants, the Court would be hard-pressed to find implied consent as a matter of law.   The testimony regarding Mr. Roman"s retreating to secure his dog is inconsistent among the officers themselves.   Although Detective McKinney and Sergeant Hamilton attest to Mr. Roman's actions and statements concerning the dog prior to entry, Sergeant Lynn, who was present at all times during the encounter, makes no mention of these alleged facts.   (See Dkt. 54)   Moreover, no one testifies that when Mr. Roman returned to the door after having allegedly secured the dog, the officers then asked for permission to enter and Mr. Roman verbally gave consent or waived them inside the residence.

consent to enter or exigent circumstances.   McClish, 483 F.3d at 1240 (citing Payton,

445 U.S. at 589–90).   Moreover, the Eleventh Circuit case law on implied consent to

enter described above had made it clear that consent cannot be inferred by Mr. Roman's

conduct in this case.   See, e.g., Shepard v. Davis, 300 F. App'x 832, 841 (11th Cir. 2008)[7]

(finding that it was "clearly established" in 2002 that "a person does not consent to being

pushed back into his home and arrested in his living room by merely opening the front

door in response to a knock and announcement by law enforcement officers")

(referencing McClish, 483 F.3d 1240; Gonzalez, 71 F.3d at 829; Edmondson, 791 F.2d

at 1515).   In Gonzalez, the Eleventh Circuit held that the mere failure to object to entry

is insufficient to establish consent.   71 F.3d at 830.   Eleventh Circuit cases post-

Gonzalez reaffirmed this principle.   See Bashir, 445 F.3d 1323; Ramirez-Chilel, 289 F.3d

at 752.   It is likewise clearly established that consent cannot be prompted by a show of

authority by law enforcement.   Edmondson, 791 F.2d at 1514–15.   In light of this

precedent, no reasonable officer in Detective McKinney's position would have believed

that he had consent to enter into a residence merely upon his announcement of purpose

when he received no response, physically or verbally, from the occupant before he

advanced into the home.   The Eleventh Circuit has made clear that simply moving aside

so as not to impede the officers' forward movement will not suffice to constitute consent.

Defendants rely on the 2015 Eleventh Circuit decision in Moore v. Pederson, 806

F.3d 1036, 1039 (11th Cir. 2015), to support their assertion that the alleged constitutional

violation was not clearly established.   (Dkt. 69 at 8–9)   In Moore, after receiving a report

---

7 The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is
persuasive authority.  See 11th Cir. R. 36-2."   United States v. Futrell, 209 F.3d 1286, 1289
(11th Cir. 2000).   Additionally, as noted, the Shepard court, cited here, relied on reported
decisions with factually similar circumstances.

of a parking-lot disturbance, a police officer approached a plaintiff's residence, the plaintiff opened the door, and the officer began interviewing the plaintiff regarding the incident. Moore, 806 F.3d at 1040.   "At some point during the conversation and after [the plaintiff's] multiple refusals to provide information, [the officer] took out his handcuffs and instructed [the plaintiff] to turn around and put his hand behind his back."   Id.   While still standing inside the doorway, the plaintiff did exactly as instructed; he "turned around and put his hands behind his back."   Id.   The officer then reached inside the residence, handcuffed the plaintiff, and arrested him.   Id. Finding that plaintiff's conduct did not evince free and voluntary consent to entry into the home, the court determined that the officer violated the plaintiff's right to be free from unreasonable seizure.   Id. at 1046.

Nevertheless, the court determined that the officer was entitled to qualified immunity because in 2008, the law was not clearly established that plaintiff's actions were not the type of "surrender" that can form the basis for consent.   The Eleventh Circuit based this finding on its prior decision in McClish, which held that police officers may not reach in a doorway to arrest a someone who is standing inside, but stated that a suspect may "surrender" to police at his doorway.   Id. at 1050 (citing McClish, 483 F.2d at 1241). Accordingly, the Moore Court found that "a reasonable officer could have understood [the plaintiff's] actions in turning around and presenting his hands in response to the officer's instructions as surrender, and consequently, as consent under McClish."   Id.

However, the instant action is wholly distinct from the circumstances presented in Moore because Mr. Roman did not engage in any actions that can be reasonably construed as "surrender" to arrest.   Unlike the officer in Moore, Detective McKinney never commanded or instructed Mr. Roman to take any action nor claimed to be arresting

Mr. Roman.   Unlike the plaintiff in Moore, Mr. Roman never turned around and put his hands behind his back, nor made any body movement prior to the officers' entry. Instead, under Plaintiff's version of the facts, Detective McKinney stated to Mr. Roman that the officers were there to arrest Plaintiff and the officers "pushed past [Mr. Roman] and all ran into the home."   (Dkt. 66-10 at ¶8)   Neither Moore nor McClish provide the officers with a reasonable belief that such conduct qualifies as implied consent.   See, e.g., McClish, 483 F.3d 1231 ("The problem in this case is that McClish did not surrender to the police, nor did he have the opportunity to do so.   Rather, viewing the evidence in the light most favorable to McClish, he was pulled from within his home, without warning, as soon as the door was opened.").   As noted previously, under clearly established law of this circuit, consent may not be obtained by a failure to object, and a person does not consent to being pushed back into his home and arrested in his living room by merely opening the front door in response to a knock and announcement by law enforcement officers.   See, e.g., Shepard, 300 F. App'x at 841 (11th Cir. 2008) ("We repeat what we held in Edmondson, [791 F.2d at 1515] that is, a person does not consent to a warrantless arrest in his home merely by opening the door in response to the demands of law enforcement officers.")

Because the facts viewed in the light most favorable to Plaintiff would demonstrate that Detective McKinney violated clearly established law in his arrest of Plaintiff, he is not entitled to qualified immunity and summary judgment on Count X is due to be denied.

### ii.  Claim Against PCSO

Count XI of the Amended Complaint alleges that PCSO (1) had a custom and policy that permitted, encouraged, condoned, and ratified the violation of Plaintiff's

constitutional rights, (2) failed to properly train its officers for maintaining proper seizures and arrests of citizens, and (3) directed, approved, ratified, and ordered the unlawful conduct of PCSO in the arrest of Plaintiff through its final decisionmaker, Sheriff Judd. (Dkt. 19 at 24–26)   Defendants move for summary judgment on this claim arguing that Plaintiff has no evidence that an official policy was the cause of the alleged constitutional violation in this case.   (Dkt. 50 at 13)

A county may be liable under § 1983 when its "official policy" causes the constitutional violation.   Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).   A plaintiff may establish a county's policy by demonstrating either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."   Id. (citing Monell, 436 U.S. at 690–91, 694; Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir.1999)).   "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is 'the moving force behind the constitutional violation.'"   Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)) (other citations and quotation marks omitted).

Plaintiff first argues that the moving force behind her unconstitutional arrest was an express government policy promulgated by Sheriff Judd.   (Dkt. 65 at 18)   According to Plaintiff, General Order 74.3, which purportedly sets forth arrest procedures to all PCSO members, provides authority for the deputies to arrest suspects in their home without a warrant.   (Dkt. 65 at 18)   Plaintiff cites section 1(b) of General Order 74.3,

which states, "A deputy may enter a suspect's premises to effect a lawful arrest in accordance with Section 901.15, F.S., when the deputy reasonably believes the person to be arrested is within the premises."  (Dkt. 66-8)   Plaintiff's argument that this policy is "facially unconstitutional" is contradicted by the very terms of the subject express policy. Significantly, in the provision immediately preceding the allegedly offending provision cited by Plaintiff, General Order 74.3 states:

> Deputies shall be aware that as a matter of Federal Constitutional Law, under *Payton v. New York*, 445 U.S. 573 (1980), there is no longer any viable distinction between making a warrantless felony arrest and a warrantless felony arrest when that arrest involves entry into a person's home.  A search warrant is required to enter a second party residence unless, permission, emergency, or exigent circumstances exist.

(Id.)   Moreover, both provisions are included under the subsection 1 of the "Procedure" section, which states "Authority for law enforcement officers to arrest without a warrant is provided in Section 901.15, F.S."  (Id.)   The Court finds that a logical reading of this excerpt of the policy demonstrates that this Section was intended to address the procedure for warrantless arrests.   It is comprehensive in that it refers to both the state law requirements for warrantless arrests under Section 901.15, Florida Statutes, and the federal law requirements for such arrests under the U.S. Supreme Court decision, Payton v. New York, 445 U.S. 573 (1980).   Nowhere in the excerpt Plaintiff provided[8] does General Order 74.3 expressly or impliedly sanction warrantless entry into private residences without consent or exigency to effect an arrest.   Thus, Plaintiff fails to provide any evidence that an express policy by PCSO caused the alleged constitutional violation in this case.

---

8 The Court notes that Plaintiff only provided as evidence the first page of the 12-page General Order 74.3.   (Dkt. 66-8)

Plaintiff further contends that PCSO is liable under §1983 because Sheriff Judd, as a final decision maker, had a custom of sanctioning warrantless entry into homes to arrest suspects.  (Dkt. 65 at 19)  Notably, Plaintiff provides no evidence of such a custom.  The only alleged unconstitutional in-home arrest mentioned by Plaintiff is her own.  It is well settled that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality.  Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 823–24 (1985) (plurality opinion)).  "A pattern of similar constitutional violations ... is 'ordinarily necessary.'"  Id. (citations omitted).  Moreover, to the extent that Plaintiff contends that PCSO had a policy for conducting illegal warrantless home arrests because Sheriff Judd "directed the course of the investigation and arrest," and "defended and ratified all of McKinney's actions," the argument is unsupported by evidence.  (Dkt. 65 at 19)  The only evidence Plaintiff submits with regard to Sheriff Judd's ratification of Detective McKinney's actions is a transcript of a post-arrest public interview of Sheriff Judd in which Sheriff Judd explained why he decided to arrest Plaintiff and another teenager connected to the investigation.  (Dkt. 66-11)  Nowhere in the transcript does Sheriff Judd even mention the actions of Detective McKinney or any of the other officers in effecting Plaintiff's arrest in her home.  Thus, PCSO cannot be said to have ratified Detective McKinney's actions based on this interview.

Finally, Plaintiff claims that the Sheriff was deliberately indifferent to training of the deputies and, therefore, there was inadequate training on the issue of warrantless in-home arrests.  (Dkt. 65 at 20)  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants

can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 489 U.S. at 389.   Again, Plaintiff puts forth no evidence to support a failure to train by PCSO, much less a deliberate indifference to individual rights.   In fact, Plaintiff has not provided any evidence of PCSO's training procedures.   On the other hand, Detective McKinney averred that he "received training from the Polk County Sheriff's Office regarding the constitutional requirements for arrest[s], including arrests in homes," and that "the Polk County Sheriff's Office conducts regular and ongoing training of its deputies regarding the constitutional requirements for arrests." (Dkt. 51 at ¶4)   Plaintiff provides no evidence to rebut this assertion or to otherwise support her claim of inadequate training.

Accordingly, the Court finds that Plaintiff has put forth no evidence of an "official policy" or a *de facto* policy or a failure to train by PCSO that caused the alleged constitutional violation and therefore, Defendant PCSO is entitled to summary judgment on the Plaintiff's §1983 claim against it.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Final Judgment on the Pleadings, (Dkt. 49), is **DENIED**.

2. Defendants' Motion for Summary Judgment, in the Alternative, (Dkt. 50), is

   **GRANTED IN PART AND DENIED IN PART**.

   a. The Motion is **DENIED** as to Count X, Claim Under 42 U.S.C. §1983 Against Defendant Jonathan McKinney.

b.  The Motion is **GRANTED** as to Count XI, Claim Under 42 U.S.C. §1983

Against Defendant Grady Judd, In His Official Capacity.

**DONE** and **ORDERED** in Tampa, Florida, this 26th day of April, 2017.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person